T.C. Memo. 2011-27

UNITED STATES TAX COURT

STEPHEN L. AND CINDY C. FLETCHER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 23968-07, 23969-07,    Filed January 31, 2011.
            23970-07, 23971-07.

<u>Chaya Kundra</u> and <u>Heather L. Bravi</u>, for petitioners.

<u>Erin R. Hines</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  The sole issue for decision in these
deficiency cases is whether petitioners are liable for the
accuracy-related penalty under section 6662[1] in the following
amounts:

_____

[1]All section references are to the Internal Revenue Code.

|       | Penalty    |
| Year  | Sec. 6662  |
| ----- | ---------- |
| 1988  | $8,222     |
| 1990  | 1,952      |
| 1991  | 2,735      |
| 1992  | 5,880      |

The accuracy-related penalty arises from an adjustment of flowthrough losses that were reported on petitioners' 1991 and 1992 Federal income tax returns and then carried back to 1988 and 1990. These adjustments are the result of petitioners' involvement in cattle breeding and sheep breeding partnerships organized and promoted by Walter J. Hoyt III. From 1971 through 1992 Mr. Hoyt organized and promoted cattle breeding and sheep breeding partnerships (collectively referred to as the Hoyt partnerships).

## FINDINGS OF FACT

Petitioners resided in Maryland when they filed the petitions in these consolidated cases. Mr. and Mrs. Fletcher both completed high school. Neither has had any training or experience in accounting or tax return preparation. Both were raised in farming communities.

Mr. Fletcher learned of the Hoyt partnerships through a coworker while employed in Florida. Petitioners subsequently received brochures and promotional materials about the Hoyt partnerships. In 1991 petitioners purportedly invested in the Hoyt partnerships, specifically Durham Farms #3 (Durham Farms)

and Washoe Ranches #6 (Washoe Ranches).  Petitioners never signed any partnership documents such as subscription agreements for either Durham Farms or Washoe Ranches, nor have they ever visited any of the properties related to the Hoyt partnerships.

Before becoming involved in the Hoyt partnerships, petitioners engaged the services of Frank Sutton, a certified public accountant, located in Kinston, North Carolina, to prepare their 1988 and 1989 Federal tax returns; petitioners used H & R Block to prepare their 1990 return.  At trial Mr. Fletcher maintained he had consulted with both Mr. Sutton and H & R Block regarding the Hoyt partnerships, but his testimony was vague and not credible in this regard.  Neither Mr. Sutton nor H & R Block provided petitioners with a prospectus about the Hoyt partnerships.

Once petitioners became investors, the Hoyt partnerships offered them the tax preparation services of Laguna Tax Service (Laguna) to prepare their Federal tax returns.  Beginning with the 1991 return Laguna played an important role in facilitating petitioners' alleged investment in the Hoyt partnerships because their initial payment was funded by refunds, resulting in claimed losses on the 1991 return and carryback losses to their 1988 and 1990 years.  As a result of carrying the 1991 loss back, petitioners claimed refunds for 1988 and 1990 of $41,113 and $9,762, respectively, on a Form 1045, Application for Tentative

Refund, which was prepared by Laguna, signed by petitioners, and filed in September 1992. The Form 1045 adjusted income initially reported on petitioners' 1988 and 1990 returns.

On May 22, 1992, petitioners signed a Form 1040, U.S. Individual Income Tax Return, for 1991, and on April 15, 1993, petitioners signed a Form 1040 for 1992. Both returns were prepared by Laguna.

In October 1992 petitioners were issued refunds claimed on their Form 1045. On July 6, 1992, petitioners were issued a refund of $9,221 for 1991. On or about November 9, 1993, respondent mailed petitioners a letter indicating that he had reduced the amount of petitioners' refund for 1992 attributable to their investment in the Hoyt tax shelter. Petitioners were not issued any refund for 1992.

On July 24, 2007, respondent issued a notice of deficiency (notice) to petitioners for their 1988 tax year. The notice determined a section 6662(a) penalty attributable to disallowed partnership losses for Durham Farms and Washoe Ranches as reported on petitioners' 1991 tax return and carried back to 1988 via Form 1045. On July 24, 2007, respondent issued a notice for 1990 which reflected that petitioners were liable for a section 6662(a) penalty attributable to disallowed losses for Durham Farms and Washoe Ranches as reported on their 1991 tax return and carried back to 1990 via Form 1045. On July 24, 2007, respondent

issued a notice for 1991 to petitioners which also determined a section 6662(a) penalty attributable to disallowed losses for Durham Farms and Washoe Ranches reported on their 1991 Form 1040. Finally, on July 24, 2007, respondent issued a notice for 1992 and likewise determined a section 6662(a) penalty attributable to disallowed losses for Durham Farms and Washoe Ranches reported on petitioners' 1992 Form 1040.

On August 27, 2008, petitioners made payments to respondent of $38,413, $9,762, $13,678, and $29,400 for the 1988, 1990, 1991, and 1992 years, respectively, with respect to the underlying tax liability. Petitioners stipulated that they will not challenge computational adjustments made as a result of the underlying TEFRA partnership proceedings for Durham Farms or Washoe Ranches. However, for the years at issue, the penalties are affected items which must be resolved at the partner level. Cf. sec. 6221 (effective for years after Aug. 5, 1997). On October 17, 2007, petitioners timely filed petitions disputing respondent's determinations of penalties.

OPINION

Section 6662(a) and (b)(1) and (2) imposes a 20-percent penalty on an underpayment of tax required to be shown on a return if the underpayment is attributable to a taxpayer's negligence or disregard of rules or regulations or substantial understatement of income tax. Section 6662(d)(1)(A) defines a

substantial understatement of income tax as a tax understatement that exceeds the greater of 10 percent of the tax required to be shown on the taxpayer's tax return or $5,000.

Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws.  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.

Courts deciding a taxpayer's liability for a negligence penalty generally look both to whether the underlying investment was legitimate and to whether the taxpayer exercised due care in the position taken on the return.  Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217.  When an investment has such obviously suspect tax claims as to put a reasonable taxpayer under a duty of inquiry, a good faith investigation of the underlying viability, financial structure, and economics of the investment is required.  Roberson v. Commissioner, T.C. Memo. 1996-335, affd. without published opinion 142 F.3d 435 (6th Cir. 1998).

Section 6664(c)(1) provides an exception to the accuracy-related penalty if it shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1); sec. 1.6664-4(b)(1), Income Tax Regs. The decision as to whether the taxpayer acted with reasonable cause and good faith depends upon all the pertinent facts and circumstances. Higbee v. Commissioner, 116 T.C. 438, 448 (2001); see sec. 1.6664-4(b)(1), Income Tax Regs.

Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonableness and good faith reliance on the advice of a professional such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional tax adviser can be a defense to the negligence penalty but does not necessarily demonstrate reasonable cause and good faith. United States v. Boyle, 469 U.S. 241, 250-251 (1985). Respondent has carried the threshold burden of production under section 7491(c), and petitioners bear the burden of proving reasonable cause with respect to reliance on the advice of a tax professional and must establish: (1) That the tax professional was competent and had expertise in the area at issue; (2) that petitioners provided the tax professional with all the necessary and accurate information; and (3) that

petitioners relied upon the opinion of the tax professional in good faith.  See United States v. Boyle, supra; Tash v. Commissioner, T.C. Memo. 2008-120.

Respondent argues that petitioners' underpayments were attributable to substantial understatements of income tax within the meaning of section 6662(d).  Respondent also argues that petitioners' underpayments were attributable to negligence or disregard of rules or regulations.  Finally, respondent argues that petitioners have not established that they had reasonable cause for the underpayments under section 6664(c).  Petitioners counter that they acted with reasonable cause.  Petitioners viewed the Hoyt partnerships as an investment in an agricultural industry with which they were familiar and contend that they had reasonable cause and acted in good faith in relying on advice from their accountants.

Petitioners placed their trust entirely with the Hoyt organization's personnel and did not seek the advice of independent tax professionals.  Mr. Fletcher testified as to alleged conversations with the preparer of a prior tax return, Mr. Sutton, about the Hoyt organization, but the testimony was neither specific nor credible.  At one point Mr. Fletcher testified that Mr. Sutton warned him about IRS scrutiny of the Hoyt organization.  However, if Mr. Fletcher actually had a conversation with Mr. Sutton, he did not investigate this warning

concerning the IRS' scrutiny of Hoyt tax shelters. Petitioners did not receive any written opinions in support of their investment in the Hoyt partnerships from any independent tax professional.

Petitioners cite their familiarity with farming, but they have established no efforts to verify the alleged Hoyt breeding activities.

The record consistently reflects that petitioners funneled large sums of money to the Hoyt partnerships in 1992 with funds generated by carrying back fictitious losses from 1991. The substantial losses petitioners claimed warranted additional scrutiny into the legitimacy of the transactions.

In sum, petitioners have not established that they had reasonable cause or acted in good faith when they claimed the purported losses. They did not question the amended returns completed by Laguna. Rather, they negligently pursued an aggressive tax position by asserting fictitious losses as part of their scheme with the Hoyt organization. Accordingly, we sustain respondent's determination that petitioners are liable for the accuracy-related penalty for negligence for the years in issue.

To reflect the foregoing,

<u>Decisions will be entered for respondent</u>.